and State of New Jersey Are you okay to press ahead, Judge Greenberg? Yeah, I'm okay. Okay. I don't think this case is complex and I think we can handle it. Let's go ahead then and have counsel come forward and we'll proceed. May it please this honorable court, Robert J. DeGroote, D-E-G-R-O-O-T, 56 Park Place North for plaintiff appellant. I would like to reserve like three minutes at the end for rebuttal. Initially I had not requested it, but in that respect I think it appropriate. We're here to review a district court opinion that starts out in a peculiar fashion. The matter is an excessive force case in the arrest of the family. Here's what happens at the time of the summary judgment motion. The move ends, asks the court based upon sovereign immunity to dismiss the case. The court, the district court goes off tangentially and raises the issue and cites in its opinion what it considers to be bright line. Now in the context, it was evidently, you're not raising a waiver assertion here. I argue that they can't talk about this? None whatsoever. What I'm arguing to this court is that as presented and with the condition of the third circuit opinions, there is in effect no bright line opinion that says the sine qua non of continuing in this kind of action is simply being able to say, I saw Ficino, I saw Biro, I saw this particular person kicked me. You do have to identify an assailant to make a claim, right? I do. Could you just say I do when you were asked if you had to identify a particular individual? I would argue to this court that we are somehow getting in the realm of interaction with policemen that someone expects in every piece of litigation to take out an iPhone and push a button and say, here's a video of it. In this particular instance, this is a historical case. And I suggest that what the evidence will show in the takedown by the so-called leg sweep maneuver by Trooper Ficino put this plaintiff appellant on the ground. Let's take the spoliation issue for just a moment. What is the standard of review we should be applying here when we look at spoliation? Isn't an evidentiary ruling typically reviewed for an abuse of discretion? I didn't hear you. Isn't an evidentiary ruling, that is, whether evidence was used or misused, isn't that typically something that's reviewed for abuse of discretion? In this particular instance, I suggest not. Because you have to look at the context of this in terms of whether or not at this juncture, at the summary judgment juncture, it's not such that we made an application to the court to preclude evidence. The court on its own said, at this juncture of this case and the summary judgment level, I'm not going to consider it. What did you deduce in this record, in either testimony or other evidence, that would raise a plausible inference that there even was spoliation? Well, quarried Sergeant Biro, the Riverdale officer who had the patrol unit directly in back of Mr. Everyone agrees that the camera would have the perspective to be the best device to record it. That, according to the sergeant, they couldn't find that particular tape or the tape didn't exist. But he's not asked any follow-up questions in his deposition about any discrepancy in automatically turning on. Is there any discovery request that you made or request for admissions or interrogatories or for inspection? We asked in discovery to produce all the tapes. We got simply a bald-faced, you know, we don't know what happened and there is no tape. Well, the explanation he gives relates to manually turning it on and there's nothing else in terms of discovery requests or deposition responses. Judge, I disagree with that analysis. You can't interrupt. You've got to let us finish your question and then you can give your response. Yes. Okay. Did you hear the question? Yes, I did. The Sergeant Biro says that when you turn on the light bar, the overhead lights, it's automatic that the camera system and the recording system turns on. So if in response to our inquiry and discovery that where is it and the officer says, I don't know. The usual method is with this car and that system, you turn the overhead light bar on, the camera and the recording system is working. But even in his deposition where he says that, there's not a single follow-up question to ask about it. Then what happened? How does it work? Does it happen all the time? Was that true back at the time or is that a new development, a new technology that's been acquired? What I suggest is this, and you can't look at, you can't divorce the non-existence of that recording from the context of the four officers. Every one of those police officers has an affirmative duty to record by their reports what happened. Maybe I'm too cynical at this point in my life, but I think my cynicism is well-based. When four officers who are on top of this particular plaintiff appellant, not one of them talks about the man's head from the zygomatic arch through the nose being blown out. Nobody is, we're not here to discuss that he was injured. I take it that the district court accepted that he was injured. That's undisputed that there was a serious injury. Indeed, I don't even take it as contested that there was a kick. I think the court said, okay, let's accept that there was a kick. For purposes of our discussion, we'll just take it as a given that somebody there kicked the man in the face. We could even take it a step further and say, we'll accept for the purposes of discussion here, that that would constitute excessive force when you're trying to subdue a very large, drunken, and violently resisting man. We'll just take it as a given that that was excessive force. The question then becomes, and this is pertinent both to the spoliation issue and to the underlying liability issue, the issue then becomes, what do we do with our own case law that indicates that it is not enough to accuse a group of people? You have to give a jury some basis on which to identify who in the group is responsible for the wrongful act. Would you agree that our case law indicates that you've got to identify, you can't just say, here's a group of people, somebody did it. You need to identify in some fashion a basis on which a jury can rationally conclude who the wrongful actor was. I do. I couldn't agree more with the court. I suggest that since this is going to be a historical case with an analysis by the jury as to which actor was where, who was on top of them, who was next to him, and simply by pointing to that, a jury may infer that that particular officer was the officer. That's suggesting that it could go to the jury on the basis of speculation. That's not speculation. It's speculation if, you know, I named as defendants the two officers who were on the opposite side of Route 23 northbound. We named the people that were there taking him down, holding and brought him down, and were on top of him at the time of the incident. What about Trooper Bronco? I didn't hear you ma'am. What about Trooper Bronco? You know, we named and pursued strictly the four people who were there and then who were in immediate proximity of Mr. Ciotrowski. But there were five officers there and one of them is also in immediate proximity on the left side. I'm sorry for interrupting. We did not have sufficient, you know, spatial nexus to put him in the middle of it. It just didn't happen. But I thought part of your argument was that there was a conspiracy to violate civil rights that applied to all of the officers. The officers that were in the immediate vicinity and those who authorized reports, I suggest, were the conspirators, one, when the excess force was used, and secondly, to hide the activity by not making any mention whatsoever of what, in other circumstances, would be the elephant in the room. Okay, that agrees. It's a conspiracy to cover up or a conspiracy to inflict the injury. I think you're suing for an injury here and I don't think there's any evidence that would support. I can understand the theory of a conspiracy to cover up. Yes, I can. But I cannot understand how you can think that there was a conspiracy to inflict the injury in the first place. Judge, the conspiracy starts when the injury occurs and it continues by the actions of the conspirators to hide it and deny it. Okay, there's a conspiracy, but this is a suit for an injury. And I can't see where the conspiracy led to the injury. Now, maybe it made it more difficult to prove who was responsible, but the conspiracy wasn't, hey, we're going to kick this guy in the head. I don't think there's any thought on that. That's an element of proof that someone would have to look and analyze the events and what occurred at the time to determine whether or not such an agreement existed and did it continue. Wait a second, such an agreement, you mean an agreement to inflict the injury? A conspiracy may be proven, as this court knows, by the general circumstances of how things occur. No one says, I'm going to conspire with the group to do this. They're there, someone gets profoundly angry at the man and he gets his head kicked in. I thought, well, there you go, when you said someone gets profoundly angry and he gets his head kicked, I guess that's making the point that I understand Judge Greenberg's getting at. There's really not a conspiracy here to kick him in the head. That's something that happens in the heat of the moment. Your conspiracy charge effectively is, after it happened, they conspired to hide it. Is that the case? Yes. Okay. Now, this seems like sort of the classic information asymmetry problem. Your client doesn't have the information. You say the police have the information and they're hiding it. But what is it in our case law that would allow us to redress that imbalance? You've proposed a broad rule, but it seems like you're forthrightly acknowledging it would be a new rule. You're asking us to make new law. Is that right? If the court below, by what it describes as a bright line rule, which I suggest there is no bright line rule, but what we were arguing that if indeed someone could point to a bright line rule, as opposed to a fact-sensitive analysis in each case. Even Smith, which you rely on very heavily, that's a case about a failure to intervene. Even Smith, which seems to be your best case, is talking about not a claim you made here, and indeed a claim that you indicate you probably couldn't make here. In your reply brief, they take it as acknowledging a failure to intervene claim wouldn't help you because this was a one kick to the head. Nobody had a chance to intervene. So even the best case you got doesn't get you where you want to go. So I repeat, are you asking us to make new law? If you look at it, and we have researched and found 11 cases that are in this circuit. Two are opinions by this court, and there are nine cases from Delaware, the various districts in Pennsylvania, and the District of New Jersey. And I suggest respectfully that McNeil, which is a bad case, makes bad law. McNeil, we checked the record, there was no discovery, there was no medical reports, no expert reports. In the Jatrowski case, there was a medical expert to say the only way this kind of injury could occur is this. There was a liability expert. Do you disavow a failure to intervene claim? The district court said you didn't allege that he was subject to repeated kicks and the complaint couldn't be fairly characterized as a failure to intervene claim. Do you agree with that? Yes. So what are we to make of Mr. Jatrowski saying in his deposition that he was kicked in the face at least two times and the complaint alleging that he was continuously kicked in the face? He was kicked on more than one occasion. The characterization is just based upon what I would consider to be an adequate pleading that would meet the McNeil standard at that posture. All right. Thank you very much. We'll have you back on rebuttal. And we'll hear first, I'm assuming we're going to hear first from the state of New Jersey? Yes, Your Honor. May it please the court, Matthew Lynch on behalf of the state defendants in this matter. The rule laid out in how versatility controls here, where only one individual is alleged to have committed an act of excessive force. Let's get right to it. How can it be that a limited number of officers can either beat or see a beating and then make no mention of it in their police report at all and then after the fact say, well, yeah, something happened here, but I didn't do it and he didn't do it and he didn't do it and he didn't do it? I mean, how can that be consistent with just sort of fundamental sense of how tort law should work in fairness that if you've got four people and somebody kicked a guy in the head that everybody walks away? Well, all the defendants that testified all testified that they did not see anyone kick him in the head. And to say that they didn't mention, I mean, the plaintiff has characterized that somebody's got to be lying, right? He didn't kick himself in the head. And even the officers, I mean, I took a look at the deposition testimony. One officer said, yeah, I saw him beforehand. He had a little cut on the side of his forehead. That's it. Yeah, and then his face is bashed in on one side and there's medical evidence that it had to be a very severe punch or a kick. So there's no evidence that would support the notion that nothing happened. Clearly, something of a very violent character happened. That's the only conclusion that the record will support, isn't it? Correct, Your Honor. Okay, so if there are four people standing there and every one of them says, I didn't see it happen, but something happened, you know, it wasn't a bad gust of wind, somebody's lying, right? Well, how can it not be the case that there's at least one person lying in that group? I mean, we did not, for the purposes of summary and judgment, did not oppose whether or not there was a kick. But to consider it mildly taken to the ground, it was the Federal Department to fill a face first down into the ground. For purposes of summary judgment, as the district court noted, defendants did not contest the plaintiff was kicked. Correct, Your Honor. Okay, so you say it was mildly taken to the ground,  or the person taking the person to the ground. I mean, I don't think there's any such thing as mildly taking a person to the ground. Oh, I didn't say mildly, Your Honor. I'm sorry if you... Oh, I thought you did. He might have misheard when you said bodily. He might have... Oh, okay. No, I mean, in fact, the opposite, I was making the opposite point, which was it was an incredible amount of force for a 300-pound man to be thrown headfirst into the ground. I wasn't mildly. Indeed. But for purposes of our discussion, we accept, and you did accept, that he was kicked in the head. And the medical evidence is supportive of that, right? Yes, Your Honor. Okay. So, you know, I'm putting it to you again. We've got four people, all four of them say, I didn't do it. Isn't it inescapable that somebody is lying? That someone is lying. Perhaps that someone, yes, if there was, in fact, a kick or that a foot made contact with his face, then one of those people is potentially lying. So why isn't this a case where the tort law should find a remedy when you've got a limited number of people and somebody is kicking a guy in the head and they're all denying it, where there's some kind of a means of shifting the burden over to that group so that they have to explain it, because they're the ones that have the information. He's face down on the ground getting his head kicked in. The four who are up there standing up, one of whom at least kicked him, they know what happened. Why is it right for the law to say, well, you can't pick the person who kicked you, so everybody walks? Well, Your Honor, I don't necessarily know that any... Assuming you faxed them one of those lines about the kick. I don't know that it was... You don't have to say assuming it. It is assumed. Just take it as a given and move from there. Somebody kicked him. You acknowledge somebody kicked him. For purposes of argument, we understand that. Why shouldn't the law say, okay, you four know what's happened. You four are going to bear the burden of demonstrating who did what, because he can't. Because under Section 1983, the statute requires personal involvement. And to then take use of some sort of ipsa roquitur type of shifting mechanism, like you're suggesting, not everyone is necessarily lying. It was an active scrum on the side of the highway. He's made an allegation of conspiracy to deprive him of his civil rights, including his right to vindicate, his right to be free of excessive force. Yes. And that applies to all four of the defendants that have been named here to the extent that they, as he alleges, that they did not, they deliberately omitted this information from reports and, as he alleges, provided false testimony and depositions in grand jury testimony. Right? Well, I'm not, I mean, it's possible within the realm of possibility, and there's nothing to refute the fact that whoever, all the other defendants who did not do the kicking, that they did not see it happen. They all testified that they did not see it happening. And there isn't anything to refute that. Well, we have here what seem like classic credibility findings that need to be made by a trier of fact. Right? And as to your clients, Trooper Heinbach testified that his sole focus was Mr. Jutrowski and that if anything would have struck Jutrowski in the face, I would know. Trooper Francino says that he was the closest one to Jutrowski's head and he's somewhere between six inches and three feet away, and both of them were testifying that they saw no kick. If we take as a given, as was not contested before the district court, that there was a kick, and that is the only medical evidence in the record, then we have a classic credibility finding that needs to be made with a conspiracy charge, as against all defendants. Why isn't there a triable issue here to move forward to a jury? Because under Rule 56 in the Soviet Judgment Center, there has to be at least something to get past the line for a reasonable jury could find by a preponderance of the evidence that the specific individual who kicked him. And why isn't all of that enough? I think it would have to be some form of affirmative evidence, as opposed to just saying that there's no statement by any person, there's no other evidence put forth by the plaintiff to show specifically who it was. And I don't know the credibility determinations in terms of... Couldn't a jury looking at this find for the plaintiff, could a reasonable jury on this record, which you've accepted, is repeating you've accepted there's a kick, couldn't it say, yeah, if somebody's face gets crushed and there's a kick, and people are standing and looking right there at him and indeed saying if something had happened, we'd have known it, that a jury could say, well, then there's a conspiracy of silence here. There's a classic conspiracy of silence. And so we're going to find all four liable for conspiring to cover up. Well, to get back to what Judge Greenberg said when the plaintiff was before here, and that the plaintiff admitted this, that the injury here is stemming from the physical injury related to the kick. There's a claim in the complaint. I mean, I'm looking at it. Count five, conspiracy to violate federal civil rights. Paragraph 58B, the defendant's defiled false, misleading, and untrue police reports. There's a claim in the complaint that there was an effort to deprive him of his civil rights by lying about the evidence and preventing him from making a case in court. That's what it reads like to me. Why isn't that a claim as to which there's evidence in the record upon which a rational jury could find for the plaintiff? Because, one, that claim does not relate to the injury involved in the case. He got kicked in the face, and that's what they're covering up. That's the relation. That's what it says right there in 58B. They did file false, misleading, and untrue police reports. It's referring to hiding the fact of the kick. Right? I don't think that there's any common evidence that he put forth that either of the state trigger defendants did make any misleading statements. It's omissions. It's omissions that he's talking about. Counsel, it's been 31 years since I was on the appellate division of the Superior Court, but it has come to me that the New Jersey law was that if there was a product and the product failed because of some part, and you could show that the part was manufactured by A, B, or C, that if you sued A, B, and C, the burden of proof shifted, but somebody had to be held liable. Or maybe the law was that they were all liable and it was divided. Of course, that's state law, but you're suing strictly under federal law. I mean, suing under federal law here. Yes, Your Honor. In other words, is there a state law count, a state law claim, or is it just under 1980? I believe, Your Honor, that he plotted state law claims for assault and battery, but I don't think that he's appealing the dismissal of those here. There was nothing in the briefs or in the notice of appeal expressly stating that the state tort law causes of action, the grand summary judgment as to those was being appealed, and, indeed, he didn't make any argument or cite any state cases in relation to the tort law claims. So the way I take it and I think is that on appeal, he's strictly appealing the grand summary judgment in relation to the Section 1983 cause of action. Okay. Okay. Thank you, Mr. Lynch. We'll hear from counsel for the Township of Riverdale. Yes, sir. Good morning. Good morning, Your Honor. Anthony Sejas on behalf of the Borough of Riverdale Defendants. You may proceed. Well, to answer some of the questions that you were answering with regard to the state, I think that, as the judge below, Judge Vazquez, put it, is that he's constrained to enter this decision. He's assuming there's a kick. He's accepting their expert's argument, saying that only a kick could have caused this. Could Mr. Jodorowsky have been kicked in the face and all the officers not be lying? Sure. Was there shuffling around him? A shoe could have come in contact with his face. To say that the only outcome could be a lie and a credibility determination, I mean, I find lots of stuff we can try to do, but it's not going to be the case at all. Well, there's medical evidence here indicating that it had to have been a very forceful punch or a very forceful kick. That's the record we're dealing with, not an accidental shuffling of the feet. And, indeed, if I understand correctly, it's not just the state. It's the township also that accepted that record for purposes of summary judgment, right, that there was a kick, not an accidental nudge of the face with the foot. What I accepted, and in my papers, was that his face was kicked by someone in law enforcement. The expert report was submitted as part of the counterstatement of facts. And there's no counting expert report. Correct. But there's also the way my boss was looking at this in the light most favorable to Mr. Jodorowsky. And in the McNeil case, he was kicked in the head by one of those two officers, and there the court was similarly constrained to say, if you can't show me who did, just tilt this, tilt it one, give me something. Okay, how about this for something? Okay. That our officer bureau testifies at his deposition that the dash cam goes on automatically when the lights are engaged, that we know based on another dash cam that his lights were engaged, and that there's mysteriously no dash cam tape from the officers. There's nothing mysterious about it. This case, like any case, was managed by a magistrate. This issue was discussed, and I fully represented it. None of my interrogatories or anything is attached to their statement of facts. They're just saying we asked for it. It's not there. There was no tape. And if there's no tape and no explanation for there being no tape, and indeed the only thing in the record from the officer is in his testimony he says, well, I didn't record it manually. But he also says in his deposition that it goes on automatically, that camera goes on automatically when you engage the emergency lights. Why doesn't that raise an inference that there was a tape at one point and now there's not? Because the reason is that, as the officer explained, he did not record in this instance because he believed he was responding to. . . He didn't record it manually. That does not answer the question which is being put to you, and that is he said in his deposition testimony it engages automatically when you engage the lights. So even if he did nothing manually to make it happen, the record is bereft of an explanation for why the automatic recording doesn't exist. Isn't that right? Assuming it was possible, yes. Okay, well, when you say assuming it was possible, it's your client's testimony. Well, it's unrebutted. Sure, but if you look at that one line in his deposition, without any follow-up questioning, it doesn't refer to the car he's using at the time or the current car. This issue was . . . Your Honor, this issue would have never have been raised had summary judgment not been . . . I can't even believe that it was raised. It was discussed at every hearing. There is no tape. This is the quote. How was the recording device activated? Answer, it activates with lights. What type of lights? Emergency lights. So that sounds to me like a statement of historical fact. The car I was in, the dash cam way it works, you turn on the emergency lights, the dash cam goes on. Why is it on the plaintiff? I mean, are you saying that absent a motion to compel, it's not enough just to ask for the evidence, and then if it's not forthcoming, you're out of luck? Absolutely not. Okay. We're saying that it was asked for. It was. And we told him that it didn't exist, and the Bureau did not record it. Okay, but the question is what inference can be reasonably drawn from that? And our question in Brewer says that no unfavorable inference arises with a failure to produce as otherwise properly accounted for. Here we have a record where there's testimony that indicates that it would have been automatically created and it was not produced. There is no other explanation that you're pointing us to that otherwise accounts for it. Aren't we left with it being appropriate for there to be an unfavorable inference drawn from that? Well, again, speaking to summary judgment, if the unfavorable inference was that he was kicked in the head, we've admitted to that. No, the unfavorable inference is something to the effect of these state, excuse me, these township defendants, they deep-sixed this because it was bad for them. That's the adverse inference, that this tape would have shown culpability on the part. Now, I take it from the state that they're washing their hands of it and saying, we didn't have anything to do with that tape disappearing or not disappearing. This is on the township guys, so there's a little bit on your side of the V of we're not going to go down with the township's ship, so to speak. But why isn't the inference, not just that there was a kick, but that if we would know that it was the township officers who did it, and that's why the tape is gone. And again, I would go back to the fact that it was represented to plaintiffs that the tape did not exist. After that, there was no follow-up, no let me inspect it, nothing. Why is that legally relevant? That's the question we put to you before. Why is it legally relevant that there was not some further inquiry? If they ask for it, it's not forthcoming, and all you tell them is it doesn't exist, doesn't that set up the adverse inference all by itself? Where is it in the law that they have to file motions to compel or do something further? I think that in this case, the question is why wasn't... If you're going to ask why wasn't it recorded, and the officer says why it wasn't recorded, I believe that was... What did he say? He says we only have to record during a motor vehicle stop. That's a manual, that's a statement about manual taping. He says he didn't tape it manually, but he also says it would record automatically. That's in the record, so it doesn't help you to refer to him saying I didn't flip it manually. Okay, he didn't flip it manually, but he also said it should have taped automatically. Now what's your explanation? If you've got one now, let's hear it. Is there an explanation for why this tape doesn't exist? The explanation is because it was never recorded in those cars at that time. So when he says how was the recording device activated, it activates with the lights, your statement is that even though there's nothing in the record to contradict that, we should accept that that's how the world operated. Yes, Your Honor, and for the reason is that, again, up until summary judgment, like any other exchange of discovery in this case, this was a non-issue. This wasn't anything that went back and forth. You know, Mr. Sahas, I demanded those tapes. This was between counsel litigating a case for over two years. I was at every deposition. I was at every conference. And it was made known that the tape did not exist because it was never recorded. And that was a dead issue. It was resurrected here at summary judgment. And, again, there is the same reason that patrolman Rommeling testified. I didn't manually activate it because I didn't think I was, one, responding to a motor vehicle stop. I was coming to an accident. And, two, as soon as the state police got there to their jurisdiction, we were packing up and getting ready to leave. To the extent there is a plausible inference that can be drawn in spoliation, isn't that just one more piece of evidence supporting a basis for the conspiracy to cover up, to go to a jury, that there's a triable issue of fact there, taking account of the inference of spoliation and the inference from the conduct of all four of the defendants here in representing that no one saw anything, that there was an agreement to violate civil rights. Again, there needs, I think, an inference upon an inference. There needs to be something, some conversation. Did you guys meet afterwards, anything? There was an internal affairs conducted here where the Riverdale police officers were also interviewed. Nothing by any evidence whatsoever has come. I even asked, again, to accept the one expert, the medical expert over here, which the court did. My entire motion for summary judgment was based upon their police procedures expert, who says, I reviewed all the evidence and I didn't see any evidence of collusion or corruption. The law of conspiracy doesn't require there to be an explicit agreement or a meeting where it's explicitly discussed. The nature of an agreement, an understanding, even a tacit understanding, that can be implied by a jury based on circumstantial evidence, including conduct. And why isn't the uniform conduct here in folks who were in very close proximity with their sole focus on Mr. Jutrowski, all of whom say they saw nothing, and all of whom, as in Smith, all of whom have been named, right? Why isn't that enough to proceed to a jury trial? Because any time that there is, any time there's two police reports out there, and a plaintiff, whether they're injured or not, they want to bring some type of violation, all they have to do is show that there's two police reports then. And just that someone might be lying. I didn't do something that's not contained in a police report. There you go. I've met my burden somehow. It's not that you've met your burden, right? Because a jury might reject it. The question is, when you've got four police reports and you've got deposition testimony where it's acknowledged by the police that he had a slight cut on his head before, but afterwards half of his face was kicked in, that that's the sort of thing that would typically show up in a police report, and if all four reports don't have it, maybe a jury could make an inference about that. No? You aren't any time that there's any type of evidence the plaintiff wants to, alleges that can be there. Here, I think the testimony was there was more swelling to his face than afterwards. That was testified to. Not his entire face was caved in or anything like that, but it was limited to the, I believe it was Romley who said, I noticed that there was additional swelling. All right. Well, thanks very much, Mr. Sayag. Thank you very much. I appreciate it. If you have any more questions. Okay. Thank you. We have Mr. DeGroote then for rebuttal. Actually. Mr. DeGroote, I just want to get one thing clear. What is your cause of action that you're pushing now? Is it strictly under 1983? In the complaint and the part of it. I'm talking about what you're arguing on the appeal. What's in the brief? What is it that you're pressing on the appeal? In other words, what is it that we have? We don't have to deal with something because it was raised, a trial if it's not raised on appeal. What is it on your brief? This court also has to deal with the dismissal in the district court level of the state court claims, which I suggest go to the heart of this matter. Did you raise that in your brief? Yes. In this brief, no. We primarily focused on the grant of summary judgment in its totality. It's an appeal from a summary judgment. Now, if the summary judgment was correct, then you lose the case. Now, what is it that you raised to reverse the summary judgment? Well, then I am back, and every count that was not dismissed on the 12p6 prior motions will be continued to be presented to a jury for factual determination. Okay. Are you telling us that those counts are still alive, even though summary judgment was granted against you? If that's true, we don't have a final judgment. No. At this posture, all the pendant claims were also dismissed. I am out as to everything the way I look at the presentation and the decision and order of the court below. That court had jurisdiction. Everyone agreed to it. In its entirety, the complaint was dismissed. What about what I understand to be part of Judge Greenberg's concern and my concern as well? If you've got a no state law claim, because those were dismissed, and your conspiracy claim, what you're left with is 1983 civil rights claims, what is it that you have in the law that you can point to in federal law that allows for the kind of burden shifting that you might have had under New Jersey state law when you have a discrete set of defendants and a conceded wrongful act? What I'm suggesting is that because the court below was the court of jurisdiction and it had the jurisdiction over everything, when summary judgment was granted, it was granted in its entirety as to the entire complaint, the pendant state claims and the 1983 action. No. What you're trying to do at the podium right now in your rebuttal is resurrect claims that were dismissed and were not subject to the appeal in the sense of not being argued. I see no argument at all with respect to the dismissed claims. So we're just talking about the claims that were subject to summary judgment Yes. And those are only section 1983 claims, right? That's correct. Okay. So what is it in federal law that you can point to which is akin to, if anything, akin to state law which would allow you to say, here's a discrete group of defendants, we can't identify which of them specifically did it, but the burden for that should fall on them because they've got the information about wrongdoing, I can't get it. That's a state law tort principle that makes its way through some different state laws. What do you got, if anything, in federal law that would allow you to make that kind of claim in a section 1983 civil rights action? The civil rights violations also went to the extent that by the wall of silence and the, I suggest, destruction of the Sergeant Bureau tape. Now, you have to look at the destruction or the non-production of the Bureau tape in the same context as the Romelli tape. He has the same part. Did you ever ask the court to order them to produce that tape? I did not. When I make a demand and it's not produced, I think I can reasonably rely on the affirmative statement by an adversary in the United States District Court that it doesn't exist. So you're arguing now, based on our law, based on Schar and Smith, that we should look at the, the reason this should move forward is because of the conspiracy count. Yes. You're not suggesting that our case law would support the excessive force claim itself going to the jury when your client is unable to identify which of four or five officers present actually engaged in the case. I am not. Assuming arguendo that you reinstate to where I was before, I am not giving up my excessive force claim. No, I'm not. I will attempt to produce it to go forward on it. Then address, please, Judge Jordan's question as to the excessive force claim. Yes. Because there, doesn't our case law indicate that speculation is not sufficient? We need evidence of, for that substantive offense, for at least some indication of who it actually was who engaged in the kick, particularly as you have disavowed the notion here today, clearly, of any failure to intervene. With the facts as they have been developed in discovery, I suggest that a jury may find that, you know, Trooper Heimbach kicked this man simply because he was the closest one in proximity. It's like someone who murders their parents and says, Have mercy on me, I'm an orphan. You know, they caused the man to be unable to see out of his eye and now they want the benefit of it. But your client in his internal affairs interview at least described the boot, which would not match up with a trooper boot, right? He described a boot which in most likelihood was closer to the boots worn by the Riverdale police officers. Yes. That's what he did say. Okay. But, you know, when looking in the context of someone lying face down with the inability to see out of one side of his head and four officers standing over him, I think a jury can accept what his observations were in the context of where he made them. Okay. We have your argument. Thank you very much, Mr. DeGroote. Thank you. We thank counsel on both sides and we'll take the matter under advice.